**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MATTHEW DEWAN, Individually and On Behalf of All Others Similarly Situated,** | § § § § | |
| **Plaintiff,** | § § § | **No. 4:12-cv-03638** |
| **v.** | § § § | |
| **M-I, L.L.C. d/b/a MI SWACO,** | § § § | |
| **Defendant.** | § | |

---

## REPLY BRIEF

---

NOW COMES M-I L.L.C. d/b/a M-I Swaco (hereinafter "M-I Swaco"), Defendant, who states as follows:

### OVERVIEW

On January 3, 2014, M-I Swaco moved for summary judgment as to all claims brought by Dewan in his individual capacity and as representative for an alleged collective class of employees.  Specifically, M-I Swaco moved to dismiss Casey, the sole opt-in Plaintiff, as Casey has never appeared in this matter other than in a represented capacity, and the action has never been certified.  Accordingly, Casey's claims should be severed and dismissed.  M-I Swaco also moved to dismiss the claims of Dewan, and alternatively, Casey's claims if he is not dismissed for failure to certify, as M-I Swaco was entitled to pay them on a salary exempt basis.  More particularly, they meet the requirement for the administrative exemption as:  both were paid a

salary in excess of $455 per week; they performed non-manual work; that work was directly related to the general business operations of M-I Swaco's customers; and they regularly exercised discretion and independent judgment with respect to matters of significance.  M-I Swaco also showed that they qualified for the outside sales exemption as they worked outside of M-I Swaco's place of business and routinely made sales to M-I Swaco's customers.  In light of the above, M-I Swaco is also entitled to assert the combination exemption for Dewan and Casey.  All material points were properly supported by cites directly to the deposition testimony of Dewan and Casey.

Plaintiffs' opposition attempts to avoid the facts and testimony cited by M-I Swaco.  In attempting to do so, Plaintiffs rely upon a few highly selective quotations from their deposition testimony, which they take out of context, and they ignore their own testimony that contradicts their position.[1]  Plaintiffs also rely on inapposite case law and/or selective quotes from cases that do not apply in the present circumstances.  In short, Plaintiffs' opposition is composed, in large part, of "sound bites" that do not accurately state the record or the law.  In this way, Plaintiffs attempt to avoid the facts and case law cited in M-I Swaco's motion.

Plaintiffs cannot dispute the fact that they each received a starting salary of $53,100 per year and bonus compensation on top of their salaries.  (Dewan Depo. at 68:8-10; Casey Depo. at 77:6-8.)  They were located at customer sites performing non-manual work. (Dewan Depo. at 36:23-37:1, 89:7-90:2; Casey Depo. at 94:10-12, 165:3-5.)  Their job was to provide advice and recommendations to those clients regarding the mud system (Dewan Depo. at 95:9-22; Casey Depo. at 62:25-63:3, 73:11-20), a critical component of the business operation, and sell products to those clients, including basic mud supplies and upselling specific M-I services.  (Defendant's

---

[1] Significantly, Plaintiffs do not contest M-I Swaco's description of their primary duties.  Rather, they argue that those duties do not qualify for the exemption.

Ex. 8; Dewan Depo. at 76:18-77:11; Casey Depo. at 111:7-16.)  In other words, Plaintiffs were highly paid outside consultants.  If that does not meet the requirements of the administrative exemption, it is hard to envision a position that does.  Accordingly, the administrative exemption applies.  The fact that Plaintiffs admit that a significant and routine part of their job was selling to the client establishes that the outside sales exemption applies.  (Dewan Depo. at 77:12-20; Casey Depo. at 111:7-16.)  Given the fact that Plaintiffs meet the requirements for both the administrative and outside sales exemptions, application of the combination exemption is warranted as well.

## ARGUMENT

### I.    Plaintiffs Fail to Accurately State the Law or Facts.

In moving for summary judgment, M-I Swaco relied on Plaintiffs' testimony and supporting case law to establish that the exemptions apply.  Plaintiffs' opposition does not directly refute any facts offered by M-I Swaco or address any of the case law cited in M-I Swaco's motion.  Instead, the opposition sets forth its own propositions, many of which are not properly supported by the underlying testimony or the case law.[2]

As an example, Plaintiffs represent that "summary judgment is a drastic remedy that must be exercised with extreme care to prevent taking issues of fact away from juries."  (Op. at 3.) Aside from an Eighth Circuit case that is over 20 years old,[3] every case cited by Plaintiffs to support this proposition was decided before the Supreme Court's decision in Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Plaintiffs' statement is clearly not the state of the law today in the

---

[2] Plaintiffs' failure to directly address M-I Swaco's case law and deposition cites and resort to "sounds bites" taken from inapposite cases and out of context deposition testimony evinces the weakness of their arguments.

[3] Plaintiffs' cite to Wabun-Inini v. Sessions, 700 F.2d 1234 (8th Cir. 1990), is also misleading as it immediately states the Celotex standard after citing older Eight Circuit case law for the proposition advanced by Plaintiffs.

Fifth Circuit (or any other circuit).  See e.g., Mack v. Equitable Ascent Financial, LLC, ____ F.3d ____, 2014 WL 1408266 at * 1 (5th Cir. April 11, 2014) ("The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.")  Similarly, Plaintiffs misstate the facts in statements of facts number 2, 3, 7, 8, 11, 13, 14, 15, 16, 18 and 20.

Plaintiffs' statement of fact number 2 is incorrect.  The record shows that DFS's or mud engineers use standard tests, visual observations of the mud and rig conditions, and talking with the drilling crew in order to determine actual down hole conditions.  (Dewan Depo. at 126:17-127:7;  Casey  Depo.  at  106:17-107:10.)[4]    Mud  engineers  then  formulate  and  make recommendations to the rig supervisors concerning chemical additives and other treatments to the mud for the next 12-24 hours.  (Dewan Depo. at 95:9-22; Casey Depo. at 62:25-63:3, 73:11-20.) In formulating those recommendations, mud engineers are required to use independent judgment and discretion in order to make trade-offs among various mud properties in order to optimize the overall performance of the mud.  (Dewan Depo. at 151:25-152:5; Casey Depo. at 151:6-14.)

Plaintiffs' statement of fact number 3 is incorrect.  Mud engineer is a career field with five different levels.[5]  (Van Vranken Depo. at 6:21-7:15.)  DFS1 is the entry level position. Dewan and Casey were both hired as DFS2's.  (Dewan Depo. at 67:15-68:1; Casey Depo. at 28:11-25.)

---

[4] Dewan Depo. is located at Doc. No. 44-6; Casey Depo. is located  at 44-7; Van Vranken Depo. is located at 44-3 and 44-5.  The page number reflects the deposition page number.

[5] The described levels reflect the progression during Dewan's and Casey's employment.

Plaintiffs' statement of fact number 7 is incorrect.  Both Dewan and Casey testified that they ordered product from the warehouse for their customers that was billed and shipped directly to the customer.  (Dewan Depo. at 23:3-11; Casey Depo. at 110:6-22.)  Further, they were responsible for marketing and up selling M-I Swaco products.  (Dewan Depo. at 76:18-77:11, 79:12-80:4; Casey Depo. at 111:7-112:4.)

Plaintiffs' statement of fact number 8 does not fully state the facts.  Dewan and Casey's job descriptions specifically included sales-related duties. (Dewan and Casey Depo. at Exh. 8.)  Both Dewan and Casey acknowledge being aware of their responsibilities to make sales.  (Dewan Depo. at 23:3-11, 92:7-14, 93:11-15; Casey Depo. at 110:2-111:1, 111:17-112:4.)  Further, their supervisor, Donnie Van Vranken, expected them to perform such duties.  (Van Vranken Depo. at 16:16-22.)

Plaintiffs' statement of fact number 11 does not fully state the facts.  Dewan and Casey admitted to having the authority to recommend changing the specifications if down hole conditions warranted the change.  (Dewan Depo. at 168:10-18; Casey 107:2-10.)  In fact, both Dewan and Casey admitted that their primary duty was managing the mud system, which included such duties as overseeing the customer's drilling crew in maintaining the mud and making recommendations to the customer.  (Dewan Depo. at 76:21-24; Casey Depo. at 93:22-24, 161:20-162:1.)

Plaintiffs' statement of facts number 13 and 14 misstate the facts.  Both Dewan and Casey testified that they had the authority to recommend deviations from the mud plan if down hole conditions warranted.  (Dewan Depo. at 100:4-10, 168:10-18; Casey Depo. at 107:2-10.)  Further, they both testified that their recommendations would normally be accepted and carried

out before the recommendations were ever reviewed by any member of M-I Swaco management. (Dewan Depo. at 100:1-10; Casey Depo. at 108:5-9.)

Plaintiffs' statement of fact number 15 misstates the facts.  Dewan and Casey worked at the customer location.  (Dewan Depo. at 36:23-37:1; Casey Depo. at 165:3-5.)  If they were working at a site that provided a trailer for the mud engineer, the trailer would include testing and office space. (Dewan Depo. at 58:13-59:14; Casey Depo. at 63:15-65:8.)

Plaintiffs' statement of fact number 16 misstates the facts.  Dewan and Casey testified that they could leave the drilling site with permission of the site supervisor.  (Dewan Depo. at 96:2-5.)  Both added up the amount of time they spent performing work during the day which came up to less than 12 hours per day.  (Dewan Depo. at 92:21-94:23; Casey Depo. at 65:24-68:13.)

Plaintiffs' statement of fact number 18 is actually a conclusion of law.  Further, it misstates the law.  In identifying the list of functional areas, Plaintiffs apparently rely upon the list contained at 29 C.F.R. 451.201(b).  Plaintiffs, however, omit "quality control," which is included in the C.F.R.  Plaintiffs' duties are definitely of the nature of quality control.  (Dewan Depo. at 106:16-107:8, 131:8-132:9; Casey Depo. at 106:22-107:10, 118:8-119:24.)

Plaintiffs' statement of fact number 20 does not fully state the facts.  Dewan and Casey testified that they never received commission payments. However, Van Vranken's testimony was that mud engineers are periodically eligible for incentive bonuses for selling specifically identified products.  (Van Vranken Depo. 44-3 at 16:23-17:4.)

## II.  Casey Should Be Dismissed as the Matter Has Never Been Certified as a Collective Action.

M-I Swaco has cited clear case law showing that Casey should be dismissed as discovery is closed, the motion deadline has passed, and this matter has never been certified as a collective

action.  Accordingly, Casey should be dismissed as his sole standing in this case is as an opt-in Plaintiff.

Plaintiffs argue that M-I Swaco's position is *patently frivolous, and likely sanctionable.* Plaintiffs site numerous cases in support of their position that Casey is a proper Plaintiff. However, the substantive issues in those cases all involve issues of joinder, conditional certification, amended pleadings, notice to potential collective action members, and discovery issues.  Significantly, none of the cases cited by Plaintiffs address the issue of the proper disposition of an opt-in plaintiff if a collective action is decertified or never certified.  In other words, Plaintiffs' argument is entirely based on favorable "sound bites" taken from cases that do not address the issue before the Court.

Plaintiffs cite two authoritative treatises in support of their position.  7B Charles A. Wright, et al, Fed.Prac. and Proc. § 1807 (3d ed. 2005), and Ellen C. Kern , et al, the Fair Labor Standards Act (2d ed. 2010).  Plaintiffs fail to note, however, the language from those treatises that applies to the present situation.

> If final certification is not granted, the court decertifies the class, dismisses the opt-in plaintiffs without prejudice, and permits any remaining individuals to proceed to trial.  However, if final certification is granted, the action proceeds to trial on a representative basis.

Fed.Prac. and Proc. § 1807, p. 503.  Similarly, the authoritative treatise Fair Labor Standards Act states:

> If, on the other hand, the court determines that collective treatment is not warranted, the case is decertified, the opt-in Plaintiffs' claims are dismissed without prejudice, and the named Plaintiffs proceed to trial on their individualized claims.

Id. v. 2 at pp. 19-152-53.

The case law cited by M-I Swaco in its motion for summary judgment went to the specific issue of the treatment of opt-ins if a case has been decertified or never certified. Plaintiffs do not address that case law or offer any reason why it should not be followed. Based on the above, it is clear that Plaintiffs' position is contrary to the established law and that Casey should be dismissed.

## III.   Plaintiffs Are Not Production Employees.

Plaintiffs concede that they meet the salary test for qualifying for the administrative exemption. Plaintiffs must also concede that they perform non-manual work and their work is directly related to the operations of its customers as that is their undisputed deposition testimony and they do not contest those issues in opposing summary judgment. (Dewan Depo. at 76:21-24, 89:7-90:2; Casey Depo. at 93:22-24, 94:10-12.) That leaves two issues requiring the Court's analysis: whether their duties relate to the general business operations of the customer and whether they exercise independent judgment and discretion as to matters of significance. It is clear they meet those requirements.

Plaintiffs argue that they are not administrative employees. Plaintiffs first argue that they are actually production employees.[6] Plaintiffs alternatively argue that even if they are not production employees, they are more akin to cooks, janitors, security guards, or investigators. As show below, these arguments are without merit.

---

[6] Plaintiffs assert that M-I Swaco is collaterally and judicially estopped from denying that Plaintiffs are production employees. Neither assertion has merit. Collateral estoppel requires that the issue be "litigated." See Bradberry v. Jefferson Co. Toy, 732 F.3d 546, 548 (5th Cir. 2013). Judicial estoppel requires a showing that a court relied on a party's position and the party is now asserting an inconsistent position. See Reed v. City of Arlington, 650 F.3d 571 (5th Cir. 2011). A mud engineer's status for FLSA purposes was not litigated in either case cited by Plaintiffs. Furthermore, M-I has not been inconsistent. Plaintiffs specifically note that M-I took the position that mud engineers are trained individuals who monitor down hole conditions and make recommendations to the client. (Op. at 19-20.)

It is clear from the record that Dewan and Casey do not *produce* any M-I Swaco products.  Rather, they *sell* M-I Swaco products to the customer, by placing orders from the M-I Swaco warehouse.  (Dewan Depo. at 23:3-11, 92:7-14, 93:11-15; Casey Depo. at 110:2-111:1, 111:17-112:4.)  While at the customer site, Dewan and Casey perform non-manual work.  (Dewan Depo. at 89:7-15; Casey Depo. at 94:10-12.)  In fact, M-I Swaco policy prohibits them from performing work on the drilling rig (Dewan Depo. at 89:21-90:2.)

Plaintiffs' primary responsibility is to manage the mud system for the customer.  (Dewan Depo. at 76:21-24; Casey Depo. at 93:22-24.)   As such, they support the general business operation *of the customer*.  Plaintiffs argue that, because M-I Swaco derives revenue from Plaintiffs' work, they are actually production employees.  This argument makes little sense as it would invalidate the governing regulation.

The governing regulation provides that an employee is an administrative employee if his work is "directly related to the management or general business operations of the employer *or the employer's customers*."  29 C.F.R. § 541.201(a) (emphasis added).  No company is going to provide such services gratis, nor do the regulations forbid companies from claiming the administrative exemption if they profit from providing support to a customer's business.  Accordingly, Plaintiffs' "production work" argument has no merit.

Plaintiffs' alternate contention that they are on the same level as cooks or security guards if they are not production employees, is equally without merit.  Plaintiffs place great weight upon the Department of Labor opinion letter addressing DOD background investigators.  Department of Labor, WH Op. letter number FLSA 2005-21 (August 19, 2005).  The DOD background investigators are easily distinguishable.  The Department of Wage and Hour specifically noted that the background investigators merely presented factual findings to the Department of

Defense, which then made its own decision regarding the issuance of security clearances.  Here, the undisputed testimony of all is that Plaintiffs were responsible for not just accurately determining current down hole conditions, but making recommendations for processes going forward that could include deviations from the engineer prepared mud plan and which were normally accepted as a matter of course by the customer.  (Dewan Depo. at 95:9-96:1; Casey Depo. at 44:21-45:1.)

Dewan's deposition testimony recounts a significant and responsible role making recommendations to, and interacting with, the client representatives at the drill sites where he worked.  (Dewan Depo. at 57:14-17, 95:9-22; 100:4-10.)  While a client representative was in charge of the rig and established goals or expectations with respect to the pace of drilling or target depth, it would fall upon Dewan to make adjustments or trade-offs in drilling mud consistency and properties to achieve the ends desired.  (Id. at118:6-119:3, 126:17-127:1.) Dewan testified at length about the independent judgment and discretion he exercised in bringing drilling fluid back within required specifications and what specific actions he recommended that the company man take based upon his testing.  ( Id. at 90:3-21.)

For example, to bring mud back within necessary specifications, Dewan would use his own judgment to select among one or more chemical additives to achieve the desired result and improve drilling conditions.  (Id. at 23:12-24:4, 117:4-118:10.)  The addition of additives to the drilling mud is not a matter of simple measurement, as the addition of certain chemicals can improve certain drilling mud properties while adversely impacting other properties of the mud, thereby requiring Dewan to make tradeoffs among the additives to optimize the mud for the current and projected down hole conditions.  (Id. at  118:6-119:3, 128:17-127:1.)  It was up to Dewan to decide the best configuration of additives, from many potential alternatives, to achieve

the desired mud specifications, and he even had the power to recommend deviation from specifications in order to adequately address changing real-time conditions in the well, such as changing the circulation rate, altering the drill speed, conducting more "sweeps" or "trips," and adjusting "mud weight" to prevent the intrusion of gas into the well.  (Id. at 90:11-21, 127:2-7, 170:11-171:10.)

Dewan made recommendations to the client representative with respect to various M-I Swaco manufactured and/or marketed additives that should be purchased for use in maintaining or modifying drilling mud properties.  He also made recommendations for the purchase of equipment manufactured and/or marketing by M-I Swaco.  (Id. at 79:7-80:4.)  Dewan was expected to serve in this salesperson capacity and frequently did, often consummating sales through orders directly to M-I Swaco's warehouse. (Id. at 79:7-80:4 and Doc. 35-2, Exhibits 8 and 9, (FSII job description and FSIII job description).)

Under 29 C.F.R. § 541.201(a), "the work must be directly related to assisting with the running or servicing of the business."  Id.  The Plaintiffs meet that requirement as the testimony was clear that *the business does not run* if the mud system is not operating properly.  (Dewan Depo. at 108:2-109:24; Casey Depo. at 118:8-120:23.)

29 C.F.R. § 541.201(b) lists functional areas that qualify for the administrative exemption.  Importantly, one of these areas is quality control.  Id.  Quality control is defined as a system for verifying and maintaining a desired level of quality in an existing product or service by careful planning, use of proper equipment, continued inspection, and corrective action as required.[7]  See Dictionary.reference.com (attached).

---

[7] This definition of "quality control" closely parallels the description of work performed by "work planners" in Kennedy v. Commonwealth Edison Co., 410 F.3d 365 (7th Cir. 2005), cited in M-I Swaco's Motion for Summary Judgment.  There, exempt workers inspected and monitored equipment at a nuclear power plant using a combination

As previously noted, mud engineers serve as outside consultants continually reviewing the status of the customer's mud system and making recommendations as to how to optimize the mud system performance.  (Dewan Depo. at 148:13-21.)  Moreover, due to the fact that Plaintiffs must determine the appropriate corrective action and make those recommendations to the customer, the work requires discretion and independent judgment.  (Dewan Depo. at 126:17-127:7; Casey Depo. at 130:10-21.)  In this respect, Plaintiffs are clearly distinguishable from the cases and opinion letters cited by Plaintiffs in their opposition to summary judgment.

## IV.   Plaintiff's Work Qualifies as Administrative Work Under the Administrative Exemption.

Plaintiffs also offer two additional and seemingly inconsistent theories as to why they cannot be administrative employees.  First, they argue that they cannot be administrative employees as they are not engaged in running the business itself or determining its overall course or policies.   Alternatively, they argue that Plaintiffs are not administrative employees because they perform work particular to the customer's industry rather than performing the type of work every employer needs regardless of the industry.  These arguments appear to be mutually exclusive because, if Plaintiffs were running the customer's business, they would be performing work particular to the customer's industry.  Neither approach truly states a proper analysis of the administrative exemption.   Rather, this appears to be another example of Plaintiffs using beneficial "sound bites" instead of a truly reasoned application of the law.

As shown in M-I Swaco's motion for summary judgment and as discussed above, Plaintiffs perform work that directly relates to the customer's general business operations.  This is supported by both Department of Labor regulations and the case law cited in M-I Swaco's

---

of visual and digital methods; devised methods to address needed repairs or adjustments and submitted recommendations for how to best address the problem; finally, they would devise instructions to other employees who would be responsible for effectuating the repairs.  Id.

motion.   A number of cases cited by Plaintiff are inapposite and easily distinguishable.   The

remainder actually support M-I Swaco's position.

541.202(b) contains a number of factors that should be considered in determining if

Plaintiffs meet the requirements for the exemption.  These include:

> whether the employee has authority to formulate effect or interpret . . . operating
> practices; whether the employee carries out major assignments in conducting the
> operation of the business; whether the employee performed work that affects the
> business operations to a substantial degree, even if the employee's assignments
> are related to the operation of a particular segment of the business; . . . whether
> the employee has authority to waive or deviate from established policies and
> procedures without prior approval;  .  .  . *whether the employee provides
> consultation or expert advice to management; . . .whether the employee
> investigates or resolves matters of significance on behalf of management.*

Id. (emphasis added).  It is clear that the drilling fluid specialists meet these factors.

The undisputed evidence establishes that Plaintiffs have the ability to:

- Formulate and effect their customer's operating practices.  As mud
  engineers, Plaintiffs provided direction as to the additives to the mud and
  the timing and way in which the additives were incorporated into the mud.
  They also provide direction as to issues such as drilling speed and the
  amount of time that the drilling rigs spent "tripping" (removing the drill
  string from the hole and then reinserting the drill string) or circulating mud
  without drilling, all of which had significant effect on operations and
  costs.  (Dewan Depo. at 108:2-109:24; Casey Depo. at 118:8-120:23.)

- As mud engineers, Plaintiffs "managed the mud system" which is an
  integral part of the operation.[8]  Failure to adequately perform those duties
  could result in catastrophic failure.  (Id.)

- As mud engineers, Plaintiffs made recommendations to their clients that
  were implemented before any review by their supervisors at M-I Swaco.
  (Dewan Depo. at 100:1-10; Casey Depo. at 108:5-9.)   These
  recommendations could include recommendations to deviate from the mud
  plan if down hole conditions warranted.  (Id.)

---

[8] As each rig uses its own mud system, Plaintiffs' work constituted a series of separate major assignments.

- Their entire job consisted of providing consultation and expert advice to management.  They did not perform manual work.  (Dewan Depo. at 89:7-15; Casey Depo. at 94:10-12.)

- As mud engineers, Plaintiffs were responsible for maintaining a testing program in order to determine actual down hole conditions so that they could render effective advice to management.[9]  (Dewan Depo. at 126:17-127:7; Casey Depo. at 106:17-107:10.)

In addition, Plaintiffs' case law is easily distinguishable.  While an insurance inspector's job may cause a financial loss to his company based upon a poor recommendation, it will not shut down a customer's business.[10]  If the mud is not properly configured, it can result in the entire production line shutting down or the loss of the well.  (Dewan Depo. at 108:2-109:24; Casey Depo. at 118:8-120:23.)  That is a direct impact upon the general business operations of the customer.  Plaintiffs are similarly distinguishable from mortgage underwriters.  Mortgage underwriters merely identify whether the loan criteria have been met.  Mortgage underwriters are not responsible for recommending to the loan applicants how to adjust their financial portfolio and debt structure so that they will qualify for the loan.

Moreover, a number of cases cited by Plaintiff actually support M-I Swaco's position.  Plaintiff cites <u>Gallegos v. Equity Title Co. of Am., Inc.</u>, 484 F. Supp. 2d 589 (W.D. Tex. 2007) for the proposition that mortgage escrow officers do not qualify for the administrative exemption.  In discussing "directly related to management policies or general business operations of his employer or his employer's customers," that court stated:

> This phrase is not limited to persons who participate in the formulation of management policies or any operation of the business as a whole . . . *the test of "directly related to management policies or general business operations" is met by many persons employed as advisory specialists and consultants* of various

---

[9] Please note that this also exactly parallels the definition for quality control.

[10] Further, insurance adjusters often rely upon estimates that do not require the application of independent judgment and discretion.

> kinds, credit managers, safety directors, claims agents and adjusters, wage rate analysis, tax experts, account executives of advertising agencies, customers, brokers in stock exchange firms, promotion men, and many others.

Id. at 594 (emphasis added).  Similarly, Asp v. Milardo Photography, Inc., 573 F.Supp. 2d 677 (D. Conn. 2008), stated:

> The administrative operations of a business include work performed by "'so called white-collar employees engaged in 'servicing' a business as, for example, *advising the management, planning*, negotiating, representing the company, purchasing, and business research and control.'"  29 C.F.R. § 541.205(b).  The regulations state that an employee performing such work is engaged in activities relating to the administrative operations of a business *even if he is employed, for example, as an administrative assistant to an executive in the production department of the business*.

Id. at 686 (emphasis added).

Finally, Plaintiffs rely upon Bollinger v. Residential Capital, LLC, 863 F.Supp. 2d 1041 (WD Wash. 2012).  Therein, the court quoted the Department of Labor illustration of exempt financial services work:

> Employees in the financial services industry generally meet the duties requirement for the administrative exemption if the duties include work such as *collecting and analyzing information regarding the customer's income, assets, investments, or debts; determining which financial products best meet the customer's need and financial circumstances; advising the customer regarding the advantages and disadvantages of the different financial products; and marketing services or promoting the employer's financial products*.

Id. at 1048-49 (quoting 29 C.F.R. § 541.203(b) (emphasis added).

Substituting oilfield terminology for financial services terms, this illustration aptly describes a mud engineer's duties.  Mud engineers collect and analyze information regarding down hole conditions; determine which additives and changes to procedures best meet the customer's needs and anticipated drilling circumstances; advise the customer regarding advantages and disadvantage of the different options by making recommendations (which the

customer accepts) and market M-I Swaco's products and services in order to up sell the services and products to the customer.

## V.    Plaintiffs Exercise Independent Judgment and Discretion.

Plaintiffs baldly assert that Plaintiffs could not exercise independent judgment and discretion because program engineers write the mud plan.  They further argue that the amount of damage or injury that Plaintiffs could cause is irrelevant to the administrative exemption. Finally, Plaintiffs argue that they could not perform duties as to matters with significance because they lack formal education and training.[11]   There are a number of problems with Plaintiff's arguments.

The fact that the program engineers exercise independent judgment and discretion in creating the mud plan does not prevent Plaintiffs from also exercising those traits.[12]   The deposition transcripts are replete with examples of the Plaintiffs exercising independent judgment and discretion.  It is undisputed that mud engineers formulate recommendations as to mud additives based upon actual down hole conditions.  (Dewan Depo. at 126:17-127:7; Casey Depo. at 106:17-107:10.)  It is also undisputed that these conditions can vary from that in the mud plan.  (Dewan Depo. at 126:17-127:7.)  In creating these formulations, mud engineers must attempt to optimize the mud, which involves tradeoffs against the 12 properties exercised by drilling mud.  (Dewan Depo. at 151:25-152:5; Casey Depo. at 151:6-14.)  There is no formula for this.  (Dewan Depo. at 148:18-21.)  This requires independent judgment and discretion. Further, both Plaintiffs admit that if down hole conditions warrant, they have the ability to make

---

[11] Plaintiffs quote dicta from Dresser Indus. Inc v. Sandvick., 732 F.2d 783 (10th Cir. 1984), minimizing the role of "mud men."  However, Sandvick only litigated the applicability of a non-competition agreement.  There is no showing that Sandvick addressed mud engineers' FLSA status or that their primary responsibilities were actually raised as issues or litigated.  Accordingly, this is just one more "sound bite" that Plaintiffs attempt to rely upon.

[12] "No plan survives contact with the enemy."  Daniel J. Hughes (ed.)  Moltke on the Art of War, p. 575 (1993).

recommendations contrary to the parameters of the mud plan based upon the needs at the site. (Dewan Depo. at 126:17-127:7; Casey Depo. at 106:17-107:10.)  It is also undisputed that these recommendations would be made and implemented by the client before a review occurred.[13] (Dewan Depo. at 100:1-10; Casey Depo. at 108:5-9.)

Plaintiffs cite 29 C.F.R. 541.202(f) in arguing that the mere showing that failure to properly do to the job may result in death or millions of dollars in loss does not demonstrate that they are administrative employees, attempting to equate a mud engineer to a life guard who fails to adequately chlorinate a pool.  While the level of damage that Plaintiffs could inflict if they fail to perform their duties is not the sole determiner of the administrative exemption, it is relevant to assessing the exemption.  Plaintiffs' argument ignores the plain language of 29 C.F.R. § 202(a). "The term 'matter of significance' refers to the level of importance or consequences of the work performed."  Id.  It is undisputed that a failure to perform could have grave consequences. Plaintiffs admitted under oath that the consequences of not performing their job correctly could include stuck pipe, loss of revenue, loss of the well, and possible explosions.  (Dewan Depo. at 108:2-109:24; Casey Depo. at 118:8-120:23.)

Plaintiffs finally assert that it is absurd to suggest that they were given this level of responsibility based on their education level.[14]  There are no specific educational or training

---

[13] Plaintiffs also repeatedly note that they had the ability and sometimes would seek guidance from other mud engineers or supervisors.  However, their testimony is also clear that they sought this guidance less than one time a week. (Dewan Depo. at 97:9-98:20; Casey Depo. at 35:25-36:6.)  Further, it is clear that the mere fact that their decisions could be subject to review did not invalidate the fact that the exercised independent judgment and discretion.  29 C.F.R. 451.202(c).

[14] Plaintiffs attempt to paint a picture of brand new high school graduates performing mud engineer duties.  The record shows Plaintiffs had considerable world experience prior to becoming mud engineers.  Plaintiff Dewan had worked for four years as an oil well driller on the Alaskan North Slope, during which his duties had included physically mixing mud under the supervision of a mud engineer.  (Dewan Depo. at 15:14-20.)  Thus, he had a total of four years work experience prior to assuming these duties.  Plaintiff Casey had a total of five years work experience prior to assuming these duties, including military experience in the U.S. Army reserve forces.  (Casey Depo. at 14:9-17:8, 18:5-17).  In fact, the Army had enough confidence in Casey's experience and judgment to

requirements under the administrative exemption.  The issue is whether Plaintiffs were required to exercise independent judgment and discretion as to matters of significance.[15]  As shown above and in M-I Swaco's motion, they did.

Plaintiffs tacitly admit that their mistakes could have significant or even catastrophic consequences.  It makes perfect sense that, if an employer places an employee in a position that could cause dire consequences and that required the employee to make specific choices and recommendations to avoid such consequences, that the employer would expect the employee to exercise the necessary independent judgment and discretion to assure such negative consequences did not occur.

## VI.    Plaintiffs Qualify for the Outside Sales Exemption.

Plaintiffs begin by arguing that M-I Swaco somehow lost the ability to assert either the administrative exemption or outside sales exemption because it raises both in its motion for summary judgment.  Once again, Plaintiffs rely upon a favorable "sound bite" from a case that was actually deciding the issue of the good faith defense.

The case law is clear that it is perfectly appropriate to assert both an administrative exemption and sales exemption simultaneously.  In accordance with the Department of Labor's Field Operations Handbook and court decisions, the FLSA's combination exemption "allows for 'tacking' or combining exempt work under one category of the exemptions to exempt work under another category when determining if an employee's primary duty is to perform exempt

---

deploy him to Fallujah and Mosul, Iraq as a military police officer.  (Id. at 16:2-16:6.)  Casey's experience also included one year of experience in electronics on the North Slope wiring oilfield companies. (Id. at 18:5-17).

[15] Plaintiffs asserts that it is "a palpable absurdity" to argue that Plaintiffs were capable of exercising the level of independent judgment and discretion described in their depositions because they were mere high school graduates who completed an eight week course.  As previously noted, Plaintiffs significantly understate their resume qualifications.  Even so, M-I Swaco asks the Court to take judicial notice of the fact that the U.S. Army regularly takes newly graduated college students, puts them through a 16-week course, and then expects them to lead men in combat where those men's lives are on the line.  That is not a palpable absurdity; that is a reality.

work."  Department of Labor Field Operations Handbook § 22h03 (Nov. 29, 2010); *Abrams v. Newspaper Prod. Co.*, 1990 U.S. Dist. LEXIS 19970, *8 (W.D. La. Aug. 6, 1990) (noting "[t]he regulations permit the "tacking" of exempt work under one category to any other so that a person performing a combination of exempt work could qualify for an exemption where he would not have qualified solely under one exemption or another").

In <u>Schmitt v. Eagle Waste and Recycling, Inc.</u>, 599 F.3d 626 (7th Cir. 2010), the circuit court affirmed the district court's findings that the defendant was entitled to summary judgment as the employee was exempt.  The court determined that the employee was exempt under the outside sales exemption.  Further, even if the outside sales exemption alone did not apply, the employee was exempt under the combination exemption by considering both the outside sales and administrative duties.  See also <u>Hundt v. Directsat USA, LLC</u>, 294 F.R.D. 101 (N.D. Ill. 2013) (granting employer's motion for summary judgment under the administrative exemption after deciding the employee's primary duties were administrative in response to defendant's motion asserting summary judgment under the administrative, executive and combination exemptions); <u>Well v. Florida Broadband, LLC</u>, 385 F.Supp. 2d 1316 (S.D. Fla. 2005) (holding after a bench trial that plaintiff was exempt from overtime under both the administrative and computer professional exemptions and that, as a result, the combination exemption may apply); <u>Condren v. Sovereign Chemical Co.</u>, 142 F.3d 432 (6th Cir. April 3, 1998) (affirming summary judgment under the combination exemption based upon both administrative and sales duties).

Plaintiffs' argument as to the merits the outside sales exemptions focuses on such issues as the amount of training that Plaintiffs received in sales, the amount of commissions they received, their job title, and an erroneous representation that Plaintiffs were never informed that their duties included sales.  Plaintiffs also ignore their deposition testimony admissions that they

were aware of their sales responsibilities and routinely made such sales.     (Dewan Depo. at 77:12-20, 79:7-80:4; Casey Depo. at 111:7-16.)

In order to establish that Plaintiffs qualify for the outside sales exemption, M-I Swaco only needs to show that Plaintiffs were employed away from M-I Swaco's place of business and that they had a primary duty of making sales.  29 C.F.R. § 541.500.  The undisputed deposition testimony clearly supports that.  Plaintiffs worked at the client's site and Plaintiffs routinely inventoried product and ordered new product for customers from the M-I Swaco warehouses. (Dewan Depo. at 36:23-37:1, 92:21-93:6; Casey Depo. at 110:2-9, 165:3-5.) Plaintiffs also admit that they were responsible for up selling M-I Swaco products to their customers and recommending M-I Swaco products over other companies' products.  (Dewan Depo. at 77:12-20; Casey Depo. at 111:7-16.)  Further, Plaintiffs were eligible for bonuses for selling specific items and were well aware of their responsibilities vis-a-vis sales.  (Dewan Depo. at 23:3-11, 92:7-14, 93:11-15; Casey Depo. at 110:2-111:1, 111:17-112:4.)

## VII.    The Combination Exemption Applies to Plaintiffs.

As already shown, Plaintiffs' argument that the Court cannot apply the combination exemption or the administrative or outside sales exemptions because M-I Swaco has argued all three is a frivolous argument.  In the event the Court determines that neither the administrative nor the outside sales exemption constitute the Plaintiffs' primary duty, the combination exemption surely applies.  See case law cited supra at 16-17.  Plaintiffs had a primary duty of administratively managing the mud system for the customer and making recommendations to their customers regarding maintaining the mud system.  (Dewan Depo. at 100:4-10; Casey 107:2-10.)  Plaintiffs also had a primary duty of ordering products and recommending M-I Swaco products to the customers.  (Dewan Depo. at 77:12-20, 79:7-80:4; Casey Depo. at 111:7-

16.)  Therefore, assuming *arguendo* that the Plaintiffs are not independently exempt under either the outside sales or administrative exemptions, the combination of their exempt duties under both would make their primary duty exempt work and render them exempt under the combination exemption.

## VIII.   Plaintiffs Have Abandoned Their State Law Claims.

M-I Swaco also moved for summary judgment as to Plaintiffs' Texas state law claims. Plaintiffs have now conceded those claims.   Accordingly, M-I Swaco is entitled to summary judgment.

### CONCLUSION

The evidence in this case leads to only one possible conclusion.   The Plaintiffs were highly compensated outside consultants to M-I Swaco's customers.   They provided guidance and recommendations as to the maintenance of the mud system, which was a crucial part of the customer's operation.   They did so at the customer's site and did so without seeing their supervisors for weeks at a time.   Formulating recommendations required the Plaintiffs to make decisions and choices between alternative courses of action for treating the mud.   These recommendations were usually accepted without question by the client.   Plaintiffs also routinely sold product to the client, which included recommending M-I Swaco products over competing companies' products and up selling M-I Swaco products and services.   Based on the above, the employees are clearly exempt under the administrative, outside sales, and/or combination exemptions.   As Plaintiffs are properly classified as exempt, their exempt status precludes their three FLSA claims for:  failure to pay overtime, failure to pay for all hours worked, and failure to maintain records of hours worked.   Accordingly, Plaintiffs' claims should be dismissed with prejudice.

/s/ Robert P. Lombardi
Samuel Zurik III (#24044397)
Robert P. Lombardi (*pro hac vice*)
THE KULLMAN FIRM
1100 Poydras Street, Suite 1600
New Orleans, Louisiana 70163
Telephone:  (504) 524-4162
Facsimile:  (504) 596-4189
sz@kullmanlaw.com
rpl@kullmanlaw.com

Martin J. Regimbal (*pro hac vice*)
THE KULLMAN FIRM
119 3rd Street South, Suite 2
Columbus, MS 39701
Telephone:  (662) 244-8824
Facsimile:  (662) 244-8837
mjr@kullmanlaw.com

Counsel for Defendant
M-I, L.L.C. d/b/a M-I Swaco

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served the foregoing Reply Brief via the ECF on

the following:

Melissa Ann Moore
Curt Christopher Hesse
Moore & Associates
440 Louisiana, Suite 675
Houston, Texas 77002-1637
Tel.:  (713) 222-6775
Fax.:  (713) 222-6739
melissa@mooreandassociates.net
curt@mooreandassociates.net

Counsel for Plaintiff Matthew Dewan

Richard J. Burch
Bruckner Burch PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel.:  (713) 877-8788
Fax.:  (713) 877-8065
rburch@brucknerburch.com

Ira Spiro
Spiro Law Corp.
11377 W. Olympic Boulevard, 5th Floor
Los Angeles, California 90064
Tel.:  (310) 235-2350
Fax.:  (310) 235-2351
ira@spirolawcorp.com

Counsel for *Syed* Plaintiffs

**THIS**, the 7th day of May, 2014.

*/s/ Robert P. Lombardi*